UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAKELIAH POULLARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-2439-B |
| | § | |
| GATEWAY BUICK GMC LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court in this civil-rights action are: (1) Defendant Gateway Buick GMC, LLC and Heritage Buick GMC Truck, Inc. (collectively, "Gateway")'s Motion to Dismiss (Doc. 16); (2) Defendant the City of Fate, Texas ("the City")'s Motion to Dismiss (Doc. 17); (3) Defendant Randy Jones's Motion to Dismiss (Doc. 18); (4) Defendant Lorne Megyesi ("the Mayor")'s Motion to Dismiss; and (5) the City's Texas Civil Practice and Remedies Code Section 101.106 Motion to Dismiss (Doc. 20). For the reasons that follow, the Court **GRANTS** all five motions in their entirety. Thus, Plaintiff Makeliah Poullard's claims against Gateway, the City, Jones, and the Mayor are **DISMISSED**.[1] The Court, however, **GRANTS** Poullard leave to amend her complaint to address the deficiencies identified in this Order. Finally, the Court **ORDERS** that Poullard effectuate service on the not-yet-served defendants in this matter or face dismissal of her claims against them without further notice.

---

[1] The Court describes the nature of each dismissal within the body of this Order and further enumerates each dismissal in Part IV, *infra*.

# I.

## BACKGROUND[2]

This is a civil-rights case. Poullard, who alleges she is innocent, was arrested by Jones and other officers of the City for fraudulent use of another's identifying information and was detained until the charge against her was eventually dropped. Poullard brings suit based on this arrest.

In April 2018, Jane Doe, a black female, purchased a vehicle from Gateway using false credentials. Doc. 1, Compl., ¶¶ 17–18. According to Poullard, Sanders acted in concert with Jane Doe to purchase the vehicle. *Id.* ¶ 17. Sanders was arrested, and to determine Jane Doe's identity, police "focused [on] . . . those known to be relatives or associates of" Sanders. *Id.* ¶ 23.

Poullard avers that "detectives settled on a decision early on to closely investigate [her] solely because she [is] a black female and" Sanders's cousin. *Id.* ¶ 24. After identifying Poullard as a suspect, police conducted "[n]o further investigation" into her "whereabouts on the date and time that the vehicle was purchased," and according to Poullard, if police had so further investigated they would have learned that Poullard "was working her usual shift as an associate at the Waffle House" and therefore could not be Jane Doe. *Id.* ¶¶ 25, 32. Instead, however, police proceeded with "an unconstitutionally coercive operation in order to substantiate their deficient investigation." *Id.* ¶ 28.

It is undisputed that Defendant Eric Brown, the sales associate who sold the vehicle to Jane Doe, positively identified Poullard as Jane Doe upon being presented with Poullard's photo by police. *Id.*; Doc. 17-1, City's Ex. 1; Doc. 18-1, Jones's Ex. 1. Poullard alleges her drivers license photo was the sole photo police presented to Brown. *Id.* However, the City and Jones both attach to their

---

[2] The Court draws the facts from Poullard's complaint.

motions to dismiss the arrest warrant affidavit presented to the magistrate judge who issued the warrant for Poullard's arrest. *See* Doc. 17-1, City's Ex. 1; Doc. 18-1, Jones's Ex. 1. In the arrest warrant affidavit, Jones swears "Brown picked Poullard out of a photo lineup that . . . consisted of *six* black females of similar characteristics." Doc. 17-1, City's Ex. 1 (emphasis added); Doc. 18-1, Jones's Ex. 1 (emphasis added).[3] In any event, police presented to Brown a photo lineup containing Poullard's photo, and Brown positively identified Poullard as Jane Doe. *See* Doc. 1, Compl., ¶ 31.

Following Brown's identification, Jones swore to an arrest warrant affidavit and obtained a warrant for Poullard's arrest for "[f]raudulent use or possession of [i]dentifying [i]nformation," a third-degree felony. Doc. 17-2, City's Ex. 2; Doc. 18-2, Jones's Ex. 2. Jones and John Does 1–3 arrested Poullard pursuant to this arrest warrant on August 22, 2018, while she "was working her usual shift" at Waffle House. Doc. 1, Compl., ¶ 33. Poullard subsequently spent nine months in jail awaiting trial. *Id.* ¶ 41. She "maintained her innocence" the entire time, even refusing to plead guilty to a misdemeanor charge. *Id.* ¶ 45. According to Poullard, her trial date was delayed at least twice, due in part to the fact that Brown moved to Colorado and refused to participate in the prosecution. *Id.* ¶¶ 43–44. Eventually, the charge against Poullard was dropped, and Poullard was released. *Id.* ¶ 46.

Poullard filed the pending lawsuit on August 21, 2020. *See generally* Doc. 1, Compl. She brings constitutional claims under 42 U.S.C. § 1983, as well as tort claims, against Gateway, Brown, John Does 1–3, the Mayor, and the City. *Id.* ¶¶ 49–50, 72, 82, 86. Further, she brings failure-to-supervise and failure-to-train claims against the Mayor and the City. *Id.* ¶¶ 58, 66. As of the date of

---

[3] The Court addresses this discrepancy and its relevance to the pending motions below.

this Order, it appears that neither Brown nor John Does 1–3 have been served. Gateway, the City, Jones, and the Mayor, however, have been served and have filed timely motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The City has also filed a motion to dismiss the tort claims against Jones and the Mayor under Texas Civil Practice and Remedies Code § 101.106. All the pending motions are fully briefed and ripe for consideration. The Court considers them below.

## II.

### LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Rule 12(b)(6) allows a defendant to file a motion to dismiss. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted).

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 547 U.S. 10, 12 (2014). That means "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

A.     *Gateway's Motion*

Poullard brings the following claims against Gateway: (1) false arrest under § 1983;[4] (2) abuse of process; (3) invasion of privacy; and (4) intentional infliction of emotional distress (IIED). *See* Doc. 1, Compl., ¶¶ 72, 82, 86. The Court assesses these claims below and finds that each should be dismissed.

As a preliminary matter, Poullard imputes Brown's conduct in identifying Poullard as Jane Doe to Gateway and premises her claims against Gateway largely on this. *See generally* Doc. 1, Compl.; Doc. 22, Pl.'s Resp. (Gateway). For the purpose of resolving these motions, the Court assumes without deciding that Brown's conduct can be properly imputed to Gateway.

---

[4] While the complaint does not appear to bring any constitutional claim against Gateway, *see* Doc. 1, Compl., ¶¶ 48–54, Gateway seeks dismissal of Poullard's complaint "[t]o the extent [she] alleges liability . . . based on . . . § 1983," and Poullard's response indicates she intended to raise a § 1983 claim against Gateway. Doc. 16, Gateway's Mot., 5; Doc. 22, Pl.'s Resp. (Gateway), 16.

1.     To the extent Poullard raises a § 1983 false-arrest claim against Gateway, it fails on the ground that Poullard has not sufficiently alleged Gateway acted under color of law.

The elements of a § 1983 claim are: (1) that the defendant deprived the plaintiff of her constitutional rights, and (2) acted "under color of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quotation marks omitted). "Private individuals generally are not considered to act under color of law, but private action may be deemed state action when the defendant's conduct is fairly attributable to the State[.]" *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (quotation marks and citations omitted). A plaintiff establishes fair attribution by showing: "(1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor." *Id.* (quoting *Priester v. Lowndes Cnty.*, 354 F.3d 414, 423 (5th Cir. 2004)). "One way a private citizen may be a state actor is if she 'is involved in a conspiracy or participates in joint activity with state actors.'" *Id.* (quoting *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005)).

"A private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority." *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988) (citation omitted) (alterations incorporated). A plaintiff bringing a § 1983 false-arrest claim against a private actor must "show that the police in effecting the arrest acted in accordance with a 'preconceived plan' to arrest a person merely because he was designated for arrest by the private party, without independent investigation." *Moody*, 868 F.3d at 353 (quoting *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1079 (5th Cir. 1985)).

Here, Gateway argues any § 1983 false-arrest claim against it should be dismissed because the complaint establishes that the officers conducted an independent investigation in which Gateway was not involved and because Poullard does not allege sufficient facts showing that Gateway conspired with the officers to arrest Poullard. Doc. 16, Gateway's Mot., 6–7. In response, Poullard acknowledges that she "is required to allege specific facts to show an agreement between [Gateway] and the City, or its employees, to deprive h[er] of a constitutional right under color of law." Doc. 22, Pl.'s Resp. (Gateway), 16 (citation omitted). However, Poullard suggests that Brown's identification of Poullard as Jane Doe "was critical in arresting and prosecuting" her. *Id.* And according to Poullard, her prosecution "would not have occurred absent a conspiracy between Gateway and the City to identify and arrest [Poullard]." *Id.* In other words, Poullard argues that the identification by Brown and the subsequent prosecution by the City together evidence an agreement between Gateway and the City to violate Poullard's constitutional rights. *See id.*

The Court disagrees with Poullard that her allegations establish an agreement between Gateway and the City such that the Court could infer Gateway acted under color of state law. First, Poullard makes a long leap by inferring that Brown's identification of Poullard—critical to the prosecution as it may have been—evidences an affirmative agreement between Gateway and the City. The Court will not make such an inferential leap absent more supporting facts. Second, as noted above, to sustain a constitutional claim against Gateway, Poullard must allege facts from which the Court could infer Poullard was "designated for arrest" by Gateway. *Moody*, 868 F.3d at 353. Poullard has not done so. To the contrary, Poullard alleges that *the police department* first identified her as a suspect on the grounds that she is a black female and a relative of Sanders. Doc. 1, Compl., ¶¶ 24–25. Poullard alleges that "*[a]fter*" she was identified by the police as a suspect, her photo was

presented to Brown, who positively identified her as Jane Doe. *Id.* ¶ 28 (emphasis added). Thus, by her own allegations, Poullard has foreclosed any legitimate argument that *Gateway* designated Poullard for arrest. And while Poullard alleges that the investigation and prosecution were "misguided effort[s] to pin the crime on anyone associated with Sanders that was a black female," *id.* ¶ 34, and that "Defendants acted in concert . . . and were eager to find any suspect, rather than the correct suspect," *id.* ¶ 40, these allegations fall short of showing Gateway designated Poullard for arrest or otherwise agreed with the City to participate in a deprivation of Poullard's constitutional rights.

In sum, to the extent Poullard raises a § 1983 false-arrest claim against Gateway, it fails because Poullard has not adequately alleged Gateway acted under color of law. *See Notzon v. City of Laredo*, 2018 WL 3428603, at *7 (S.D. Tex. July 16, 2018) (dismissing a § 1983 false-arrest claim against private hospital where "Plaintiffs [did] not allege that any of the alleged false arrests resulted from a preconceived plan," or "that the arrest was solely a result of [the hospital's] designation of any of the [p]laintiffs for arrest, without independent investigation by the officers"); *Goodarzi v. Hartzog*, 2014 WL 722109, at *5 n.4 (S.D. Tex. Feb. 21, 2014) (same); *Childers v. San Saba Cnty.*, 2015 WL 13694667, at *15 (W.D. Tex. Nov. 20, 2015) (same).

    2.    <u>Poullard's abuse-of-process claim against Gateway fails because Poullard does not allege an illegal or improper use of process.</u>

The elements of an abuse-of-process claim are as follows: (1) "the defendant made an illegal, improper, or perverted use of the process"; (2) the defendant had an ulterior motive in exercising the illegal use of the process; and (3) damage resulted to the plaintiff. *Cooper v. Trent*, 551 S.W.3d 325, 333–34 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citation omitted). "An action for

abuse of process presupposes an originally valid and regular process, duly and properly issued." *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 249 (Tex. App.—Texarkana 1975, writ ref'd n.r.e.) (citation omitted).

Here, Gateway argues Poullard fails to state a claim for abuse of process because there was no use of process. Doc. 16, Gateway's Mot., 10. Particularly, according to Gateway, abuse of process refers to the perversion of a writ, summons, mandate, or other formal process *after* it is issued, and Poullard's claims rely on conduct by Gateway that occurred before the arrest warrant—the only formal process alleged—was issued. *Id.*

The Court agrees with Gateway. While "[p]rocess has been broadly interpreted to encompass the entire range of procedures incident to litigation," *Martin v. Trevino*, 578 S.W.2d 763, 769 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.), it is not so broad as to "encompass conduct that occurs *before the commencement of some judicial process.*" *Warner Bros. Ent., Inc. v. Jones*, 538 S.W.3d 781, 816 (Tex. App.—Austin 2017) (emphasis added), *aff'd*, 611 S.W.3d 1 (Tex. 2020); *cf. Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (distinguishing between abuse of process and malicious prosecution, which focuses on a party's actions in getting process issued). "It is critical to a cause of action for abuse of process that the process be improperly used *after* it has been issued." *Bossin*, 894 S.W.2d at 33 (emphasis in original). "If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution." *Id.* (citing *Martin*, 578 S.W.2d at 769).

Because Poullard's abuse-of-process claim against Gateway is premised on Brown's identification of Poullard, and because that identification preceded any formal process, Poullard has failed to state a claim for abuse of process against Gateway. In other words, at the time Brown

identified Poullard, there was not yet formal process for Gateway to misuse or manipulate. Poullard alleges no conduct by Gateway or Brown following issuance of the arrest warrant. And Brown's identification of Poullard itself does not constitute formal process.

Poullard argues that "process" has been more broadly defined than Gateway suggests and that Brown's identification of Poullard *can* constitute process. Poullard cites *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 332 (Tex. App.—Houston [1st Dist.] 2011, no pet.), and *Clemons v. Denson*, 981 S.W.2d 941, 945 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), for this proposition. But Poullard does not explain how these cases support her contention, and, upon reviewing them, the Court is not convinced that they do. Indeed, there is no holding, or even an inference to be drawn, in either case that process is defined as Poullard defines it. *See generally Pitts & Collard*, 369 S.W. 3d at 332; *Clemons*, 981 S.W.2d at 945. The Court thus rejects Poullard's contention that Brown's identification constitutes formal process.

Because Poullard fails to allege an essential element of the claim, her abuse-of-process claim against Gateway is dismissed.

### 3.   Poullard fails to state a plausible invasion-of-privacy claim.

The elements of an invasion-of-privacy claim are: "(1) intentional intrusion . . . upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).

Gateway argues for dismissal of this claim on the ground that no allegations support it, and threadbare recitals of the elements of the cause of action are not enough to survive a Rule 12(b)(6) challenge. Doc. 16, Gateway's Mot., 13. The Court agrees. Poullard's complaint is entirely devoid of allegations suggesting, or even supporting an inference, that Gateway (via Brown or otherwise)

intruded upon Poullard's private affairs. Poullard argues that because she has sufficiently alleged that the investigation was conducted by both the City and Gateway, she has stated a plausible claim that Gateway intruded into her private affairs. Doc. 22, Pl.'s Resp. (Gateway), 13. However, the Court has rejected the notion that Poullard's allegations establish a joint effort by Gateway and the City to violate Poullard's constitutional rights. *See supra* Part III.A.1. Rather, Poullard's complaint suggests Gateway was presented with Poullard's photo only after the police—and only the police—identified Poullard as a suspect. *Id.* Thus, Poullard's complaint does not establish that Gateway affirmatively investigated Poullard; instead, it tends to suggest the opposite. Moreover, Poullard argues that she should be permitted to proceed to discovery to learn of Gateway's role in having her identified as a suspect. Doc. 22, Pl.'s Resp. (Gateway), 13. This request undermines Poullard's argument that her complaint, as it stands, alleges a plausible invasion-of-privacy claim against Gateway.

Because Poullard fails to allege sufficient facts to sustain an invasion-of-privacy claim against Gateway, this claim is dismissed.

4.    Poullard's IIED claim fails because it is merely incidental to her abuse-of-process claim, and Poullard fails to adequately allege extreme and outrageous conduct by Gateway.

The elements of a claim for IIED are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress; and (4) the plaintiff's emotional distress was severe. *Cooper*, 551 S.W.3d at 334 (citing *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017)).

Gateway advances two arguments for dismissal of Poullard's IIED claim: (1) IIED is a "gap-filler" tort, and because abuse of process is the gravamen of Poullard's complaint, she cannot also

sustain a claim for IIED; and (2) Poullard fails to sufficiently plead extreme and outrageous conduct by Gateway. Doc. 16, Gateway's Mot., 14–15. Gateway is correct in both regards.

First, IIED is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). The tort is a "supplement" to "existing forms of recovery" where the defendant's conduct is egregious. *Id.* (citing *Standard Fruit & Vegetable*, 985 S.W.2d at 68). But "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.* (collecting cases). And where the cause of action making up the gravamen of the plaintiff's claim supplies "a remedy for the same emotional damages caused by essentially the same actions, there is no remedial gap in th[e] case and thus no support for" the IIED claim. *See id.* at 450. This is the case even where the plaintiff cannot recover on her "primary claim." *Martinez v. English*, 267 S.W.3d 521, 530 (Tex. App.—Austin 2008, pet. denied); *see also Stelly v. Duriso*, 982 F.3d 403, 409 (5th Cir. 2020).

Poullard concedes that IIED is generally a gap-filler tort, but she argues that it is nonetheless available to her here because she seeks to recover mental distress damages under the claim. Doc. 22, Pl.'s Resp. (Gateway), 14. But Poullard does not argue that mental distress damages are *unavailable* to her under the other tort claims she brings, and, as Gateway points out, Doc. 28, Gateway's Reply, 6, such damages are indeed recoverable under an abuse-of-process theory. *See Martinez*, 267 S.W.3d at 530 (finding IIED unavailable where plaintiff's "emotional distress damages [were] compensable

through the malicious prosecution tort"); *Criep v. Sentry Ins.*, 49 F. Supp. 2d 954, 960 (S.D. Tex. 1999) (awarding emotional distress damages for abuse-of-process claim).

Second, extreme and outrageous conduct, an essential element of IIED, is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890, 898 (5th Cir. 1995). Poullard argues the following facts from her complaint constitute extreme and outrageous conduct on the part of Brown (and thus on the part of Gateway):

> Brown knew the context in which he was being shown Plaintiff's photograph. Given that Brown was responsible for the sale of the subject vehicle to Jane Doe, Brown was aware of who the real criminal suspect was. Despite this knowledge, and despite having knowledge that plaintiff was not engaged in the criminal conspiracy, Brown complied with the detectives in their coercive identification process[.]

> Brown, upon seeing only the image of Plaintiff and recognizing her as a black female, concluded that Plaintiff was Jane Doe and responsible for fraudulently purchasing the subject vehicle based on the information provided to him by detectives pursuant to the suggestive and coercive photo array[.]

Doc. 22, Pl.'s Resp. (Gateway), 15 (quoting Doc. 1, Compl., ¶¶ 29, 31).

The Court finds that Brown's selection of Poullard from a lineup does not constitute extreme and outrageous conduct. *See, e.g.*, *Ledesma for Ledesma v. Dillard Dep't Stores, Inc.*, 818 F. Supp. 983, 985 (N.D. Tex. 1993) (finding plaintiff did not state a claim for IIED against department store for reporting her for trespass). And again, Poullard makes too large an inferential leap by concluding that simply because Brown sold Jane Doe the vehicle, Brown knew Poullard was not Jane Doe when he identified Poullard. The Court does not credit this allegation, as it is not a "reasonable inference,"

and it does not amount to "more than a sheer possibility" that Gateway acted unlawfully. *See Iqbal*, 556 U.S. at 678. Thus, Poullard's allegations fail under the Rule 12(b)(6) plausibility standard.

Because Poullard's IIED claim is merely incidental to her abuse-of-process claim and because Poullard fails to adequately allege extreme and outrageous conduct by Gateway, Poullard's IIED claim is dismissed.

In sum, the Court grants Gateway's motion and dismisses Poullard's claims against Gateway without prejudice for failure to state a plausible claim.

B.    *The City's Motion*

Poullard brings the following claims against the City: (1) false arrest under § 1983; (2) failure to train and failure to supervise; (3) abuse of process; (4) invasion of privacy; and (5) IIED. Doc. 1, Compl., ¶¶ 49, 58, 69, 72, 82. The Court assesses each of these claims below.

1.    Poullard fails to state a § 1983 false-arrest claim against the City because she has not adequately alleged a policy, custom, or practice sufficient to sustain municipal liability.

Municipalities cannot be held liable for the conduct of their employees via *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Instead, "municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Indeed, alleged "unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* (footnote omitted) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)). In other words, at the motion-to-dismiss stage, a plaintiff must allege: "(1) an official policy

(or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 533 (W.D. Tex. 2017) (internal quotation marks omitted and quoting *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010)).

"A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581. Allegations that fall short of demonstrating "at least a pattern of similar incidents," *Est. of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005), do not establish the type of "permanent and well settled" practice that amounts to a municipal policy or custom. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Here, Poullard's allegations are confined to her experience alone. *See generally* Doc. 1, Compl. She does not describe a single other incident involving the City or its police that is similar to hers; nor does she even baldly state that other incidents have occurred. *Id.* Rather, Poullard appears to suggest that her experience alone suffices to establish a custom. *See* Doc. 1, Compl., ¶¶ 56–58; Doc. 24, Pl.'s Resp. (City), 17. But allegations of Poullard's experience alone are insufficient, as they do not demonstrate a pattern, *Piotrowski*, 237 F.3d at 581, and Poullard's § 1983 false-arrest claim against the City fails for this reason. *See Sanchez*, 283 F. Supp. 3d at 535 (finding complaint sufficiently alleged custom of excessive force in police department where it supported cause of action with statistics over four-year period and "nine specific instances of . . . officers using excessive force"); *West v. City of Santa Fe*, 2018 WL 4047115, at *7 (S.D. Tex. Aug. 6, 2018) (finding complaint sufficiently alleged city had custom of jailing people for delinquent fines without a hearing where allegations included that the city "jails dozens of people in this manner each year," and the town "marshal described this practice of jailing . . . as 'how we do it in Galveston County'"); *Amaya v. City*

*of San Antonio*, 2014 WL 3050071, at *6 (W.D. Tex. July 3, 2014) (finding complaint sufficiently alleged city had custom of condemning property without due process where allegations included that "from 2007 to 2011, inclusive, the City . . . ruled that 41 . . . properties were to be demolished," "36 [of which] were not put on notice by [t]he City's filing with the property records").

Poullard cites several cases she claims involve "similar allegations" to hers that survived a municipality's motion to dismiss. Doc. 24, Pl.'s Resp. (City), 16. First, she cites *Mack v. City of Abilene*, 461 F.3d 547 (5th Cir. 2006) (per curiam). In *Mack*, the plaintiff, who sued the municipality for an improper search of his car,

> allege[d] that it is a policy and/or custom of the city to inadequately supervise and train its police officers, including those who were known to have engaged in police misconduct[, and] that, as a result of those policies and/or customs, [the defendants] believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated but would be tolerated.

461 F.3d at 556. The Fifth Circuit found that such allegations should survive dismissal. *Id.* Second, Poullard cites *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969 (E.D. Tex. 2005), in which the district court held that the plaintiff's general allegations "that a pattern of widespread abuse exists in the use of force generally, and taser guns in particular, against black citizens," survived dismissal.

Even if the plaintiffs' allegations in *Mack* and *Batiste* are comparable to Poullard's allegations here, these cases do not help Poullard. First, both *Mack* and *Batiste* predate the Supreme Court's decisions in *Twombly* and *Iqbal*, which clarified the demands of the Rule 8 pleading standard as more stringent than previously permitted. *See Mack*, 461 F.3d at 556 (noting that Rule 8(a) is a "liberal pleading standard"); *Batiste*, 421 F. Supp. at 988 (noting that the "liberal system of notice pleading established" in Rule 8 applied). Moreover, since *Mack* and *Batiste*, the Fifth Circuit has become stricter with regard to the sufficiency of allegations to support a municipal custom and reiterated that

a plaintiff must allege facts suggesting a pattern. *See Robles v. Ciarletta*, 797 F. App'x 821, 833 (5th Cir. 2019) (per curiam) ("To survive a motion to dismiss on an unconstitutional custom or practice claim, plaintiffs must point to factual allegations sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts." (citation omitted)). *See also, e.g.*, *Brown v. Tarrant Cnty.*, 985 F.3d 489, 498 (5th Cir. 2021); *Skyy v. City of Arlington*, 712 F. App'x 396, 400–01 (5th Cir. 2017) (per curiam).

Third, Poullard cites *Dwyer v. City of Corinth*, 2009 WL 3856989 (E.D. Tex. Nov. 17, 2009). In *Dwyer*, the court acknowledged that the plaintiff's allegations "standing alone, do not contain the sort of specificity normally required," but declined to dismiss them at the pleading stage on the ground that "'[b]oilerplate' allegations of inadequate municipal policies or customs are generally sufficient." 2009 WL 3856989, at *9. Fourth, Poullard cites *Buchanek v. City of Victoria*, 2008 WL 4093623 (S.D. Tex. Aug. 28, 2008), which likewise states that "[b]oilerplate allegations of inadequate municipal policies or customs generally suffice." 2008 WL 4093623, at *10 (quotation marks and citations omitted). Fifth, Poullard cites *Wayne v. City of San Antonio*, 2006 WL 3487022 (W.D. Tex. Nov. 30, 2006), in which the court "reluctantly" found the complaint's "boilerplate language concerning the existence of a custom" survived a motion to dismiss. 2006 WL 3487022, at *5 (quotations omitted).

The Court simply disagrees with the *Dwyer*, *Buchanek*, and *Wayne* courts and declines to follow them. The notion that "boilerplate" allegations should survive a Rule 12(b)(6) challenge in any context flies in the face of *Twombly* and *Iqbal*, in which the Supreme Court was clear: "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And with respect to municipal liability in particular, Poullard offers no

-17-

reason why the Court should follow *Dwyer*, *Buchanek*, and *Wayne* over more recent directives from the Fifth Circuit as to what states a municipal claim and what does not. *E.g.*, *Robles*, 797 F. App'x at 833; *Brown*, 985 F.3d at 498; *Skyy*, 712 F. App'x at 400–01.

Finally, Poullard cites *Allen v. City of Galveston*, 2007 WL 996628 (S.D. Tex. Mar. 30, 2007). *Allen* is an excessive-force case in which the plaintiff's claims against the municipality survived dismissal. 2007 WL 996628, at *2, *7. In *Allen*, the complaint "contain[ed] 'boilerplate' language." *Id.* at *7. But it also contained allegations that the municipality blindly supported its employees, and it supported those allegations with specific facts. *See id.* Poullard does not support her § 1983 false-arrest claim against the City with nearly as much specificity, and *Allen* is unavailing for Poullard.[5]

> i.   *Any § 1983 conspiracy claim against the City fails for failure to allege an agreement.*

Insofar as Poullard raises a § 1983 conspiracy claim against the City,[6] it likewise fails. The elements of a § 1983 conspiracy claim are: "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). To state a claim for conspiracy under § 1983, the complaint must contain facts

---

[5] The Court acknowledges that a single incident of unconstitutional activity may be sufficient to impose *Monell* liability where "the actor or actors involved had been given official policy-making authority." *Renfro v. City of Kaufman*, 27 F. Supp. 2d 715, 717 (N.D. Tex. 1998) (citation omitted). But while Poullard alleges that the Mayor "served as the lead policymaker for the City and its police department," Doc. 1, Compl., ¶ 12, she has not alleged that the Mayor was personally involved in Poullard's arrest.

[6] The City construes Poullard's complaint as raising a § 1983 conspiracy claim against it, Doc. 24, City's Mot., 17, and Poullard's response indicates she intended to raise such a claim. Doc. 24, Pl.'s Resp. (City), 20.

showing "that the defendants agreed to commit actions that violated [the plaintiff's] constitutional rights," and "[a] bald allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (citing, *inter alia*, *Lewis v. Law-Yone*, 813 F. Supp. 1247, 1256 (N.D. Tex. 1993); *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987)); *see also Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (noting that a plaintiff is required to allege facts to suggest an agreement between the parties). District courts in this circuit routinely dismiss § 1983 conspiracy claims where they are not supported by plausible allegations that the defendants agreed to violate the plaintiff's constitutional rights. *E.g.*, *Blakely*, 360 F. Supp. at 490 (dismissing § 1983 conspiracy claim for failure to allege agreement); *Hansen v. City of W. Lake Tawakoni*, 2019 WL 1116608, at *4 (N.D. Tex. Feb. 22, 2019) (same), *R. & R. adopted*, 2019 WL 1114901 (N.D. Tex. Mar. 11, 2019).

Poullard's arguments in support of her § 1983 conspiracy claim against the City echo her arguments in support of her contention that Gateway conspired with the City to violate her constitutional rights. *Compare* Doc. 22, Pl.'s Resp. (Gateway), 16, *with* Doc. 24, Pl.'s Resp. (City), 20. The Court has rejected these arguments. Thus, for the same reasons Poullard has not stated a § 1983 claim against Gateway, she has not stated a § 1983 conspiracy claim against the City. *See supra* Part. III.A.1.[7]

In sum, Poullard's § 1983 false-arrest claim against the City is dismissed without prejudice because Poullard has not adequately alleged a policy or custom on which to premise municipal

---

[7] Because a § 1983 conspiracy claim against any party would require specific allegations of an agreement, and because Poullard has failed to allege an agreement among any parties, to the extent Poullard raises this claim against other defendants, it fails for the same reason.

liability. Moreover, to the extent Poullard raises a § 1983 conspiracy claim against the City, it is dismissed without prejudice on the ground that Poullard fails to allege an agreement between the City and another actor.

    2.    <u>Poullard fails to state a failure-to-train or failure-to-supervise claim against the City.</u>

"To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). "The same elements" for a failure-to-train claim "apply to claims based upon failure-to-supervise or failure-to-discipline theories." *E.G. v. Bond*, 2017 WL 129019, at *3 (N.D. Tex. Jan 13, 2017) (citation omitted); *see also Aubrey v. D. Magazine Partners*, 2020 WL 1469955, at *9 n.10 (N.D. Tex. Mar. 26, 2020) (citations omitted).

"The failure to train municipal employees may . . . constitute a policy, but only when it reflects a deliberate or conscious choice by a municipality." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841 (S.D. Tex. 2011) (citation and quotation marks omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). Further, "[d]efects in a particular training program must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (citation omitted). A complaint "typically" does so "by alleging facts related to the locality's actual training program." *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (per curiam).

Poullard has not sufficiently alleged inadequate training or supervision by the City. Though she alleges in conclusory terms that her experience "evinces . . . a lack of policies and training

instructing officers on the appropriate manner in which to handle criminal investigations," Doc. 1, Compl., ¶ 57, she fails to allege defects in particular training procedures or explain how they are lacking. Thus, she "provides no factual allegations about the content of the [City's] training or how thorough or cursory it may have been." *Speck*, 606 F. App'x at 736. Likewise, though Poullard suggests the City "had actual knowledge of the need for policies and training" in the area of investigative techniques, she does not provide any factual support for these allegations. Doc. 1, Compl., ¶ 58. Rather, Poullard essentially asks this Court "to make the inference that a single alleged incident of misconduct means officers are inadequately trained." *Speck*, 606 F. App'x at 736. The Court will not make this unwarranted inference.

Moreover, as the City points out, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotation marks and citation omitted); Doc. 17, City's Mot., 15. As discussed above, *see supra* Part III.B.1, Poullard has failed to adequately allege instances of similar conduct establishing a pattern such that the Court could infer a policy or custom on the part of the City. For the same reason, Poullard has failed to adequately allege that the City was deliberately indifferent. This is an essential element of her failure-to-train and failure-to-supervise claims. *Zarnow*, 614 F.3d at 170.

Poullard argues that her municipal claims should not be dismissed because "at the dismissal stage, 'providing proof of a pattern of constitutional violations is exceedingly difficult for a plaintiff, who has no source of pre-discovery evidence that [s]he may produce to support such a claim.'" Doc. 24, Pl.'s Resp., 19 (quoting *Hobart v. City of Stafford*, 2010 WL 3894112, at *5 (S.D. Tex. Sept. 29, 2010)). Be that as it may, plaintiffs "must set forth at least *some* facts that allege a pattern of

unconstitutional conduct," and where a plaintiff fails "to allege any facts regarding prior violations," she has not stated a municipal claim. *Hobart*, 2010 WL 3894112, at *5 (emphasis in original). Poullard has alleged no facts evidencing even a single prior incident.

In sum, Poullard's failure-to-train and failure-to-supervise claims against the City fail because, though she states the City's training and supervision policies are lacking, she has not adequately supported this allegation with well-pleaded facts. Alternatively, these claims fail on the ground that Poullard's complaint does not establish deliberate indifference on the part of the City, an essential element of her claims. For these reasons, Poullard's failure-to-train and failure-to-supervise claims against the City are dismissed without prejudice.

### 3.    Poullard's state-law tort claims against the City fail because the City is immune.

The Texas Tort Claims Act (TTCA) waives governmental immunity for torts sounding in negligence, but it "does not waive immunity for claims arising out of intentional torts." *Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) (quoting *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014)). In other words, "intentional conduct, no matter how it is pl[eaded], falls under the TTCA's sovereign immunity waiver exception." *Id.* (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)).

Constitutional claims premised on intentional conduct by police fall within the TTCA's protection. *See Aguirre*, 2021 WL 1574046, at *16 ("Plaintiffs do not and cannot dispute that putting Aguirre in handcuffs, bringing him to the ground, and applying pressure to his legs and back was intentional conduct by the Officers that they allege caused his death: a quintessential intentional tort claim.").

Here, Poullard brings her abuse-of-process, invasion-of-privacy, and IIED claims against the City. *See* Doc. 1, Compl., ¶¶ 72, 82, 86. Even if Poullard had stated plausible claims for each of these causes of action, *see supra* Part III.A.2–4, she nonetheless cannot sustain them against the City. The City posits that each of these claims is an intentional tort grounded in intentional conduct, and Poullard does not dispute this. Doc. 17, City's Mot., 18; *see generally* Doc. 24, Pl.'s Resp. (City). Indeed, Poullard does not respond at all to the City's argument that Poullard cannot sustain these three claims against it. Thus, the Court finds that governmental immunity bars Poullard's abuse-of-process, invasion-of-privacy, and IIED claims. These claims are dismissed against the City with prejudice.

C.     *Jones's Motion*

Poullard brings the following claims against Jones: (1) § 1983 false arrest; (2) abuse of process; (3) invasion of privacy; and (4) IIED. *See* Doc. 1, Compl., ¶¶ 49, 72, 82, 86. The Court assesses each of these claims below.

1.     Poullard fails to state a § 1983 false-arrest claim against Jones.

Below, the Court assesses Poullard's § 1983 false-arrest claim to the extent she has alleged such a claim against Jones. In doing so, the Court first addresses a preliminary issue raised in the briefing: whether and to what extent the Court can take judicial notice of the arrest-warrant affidavit presented to the magistrate judge and upon which the magistrate judge based his probable-cause decision. *See* Doc. 18, Jones's Mot., 5. Second, the Court addresses Jones's argument that, to the extent Poullard brings constitutional claims against him in his official capacity, such claims should be dismissed. Third, the Court analyzes Jones's argument that, to the extent Poullard brings a constitutional claim against him in his individual capacity, such claim should be dismissed.

i.    *Judicial Notice of the Arrest Warrant and Arrest Warrant Affidavit*

As a preliminary matter, Jones asks the Court to take judicial notice of the arrest warrant affidavit and the arrest warrant itself, both attached to Jones's motion. *See id.*; *see also* Doc. 18-1, Jones's Ex. 1; Doc. 18-2, Jones's Ex. 2.

"[I]t is 'clearly proper' for a district court to take judicial notice of matters of public record in deciding a 12(b)(6) motion." *Dent v. Methodist Health Sys.*, 2021 WL 75768, at *2 (N.D. Tex. Jan. 8, 2021) (quoting *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)). This includes arrest warrants. *See McDowell Bey v. Vega*, 588 F. App'x 923, 926 (11th Cir. 2014) (per curiam) (approving district court's decision to take judicial notice of two arrest warrants in the docket of underlying criminal case in deciding Rule 12(b)(6) motion); *Causey v. Parish of Pangipahoa*, 167 F. Supp. 2d 898, 906 (E.D. La. 2001) (taking judicial notice of arrest warrant attached to defendant's motion to dismiss plaintiff's false-arrest claim under § 1983); *Dent*, 2021 WL 75768, at *2 (taking judicial notice of arrest warrant attached to defendant's motion to dismiss because it "is a public record that was filed in the Tarrant County court and bears the seal and signature of the magistrate judge"); *Scott v. White*, 2018 WL 2014093, at *3 (W.D. Tex. Apr. 20, 2018) (noting that "district courts in this circuit have taken judicial notice of arrest warrants for the purpose of deciding motions to dismiss under Rule 12(b)(6)" and collecting cases).

Whether a court may take judicial notice of an arrest-warrant *affidavit*, however, is less clear. Arrest warrant affidavits that are publicly filed are public records. *See Camacho v. Johnson*, 1998 WL 224529, at *10 (5th Cir. Apr. 17, 1998) (table opinion) (per curiam) (stating that an affidavit supporting an arrest warrant constitutes a public record). But because an arrest warrant affidavit

contains an officer's account of facts, the Court finds that it is inappropriate to take judicial notice of potentially disputed *content* of the arrest warrant affidavit at the dismissal phase. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279–80 (11th Cir. 1999) (noting that affidavits are "clearly the sort of evidentiary material that is not appropriate at the 12(b)(6) stage"); *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 665 (N.D. Tex. 2011) (noting that at the 12(b)(6) stage, it may be appropriate to take judicial notice of the existence of affidavits, but not of their disputed content). Instead, the Court takes judicial notice that Jones swore to the facts contained in the arrest warrant affidavit and that the magistrate judge found those facts constituted probable cause to issue an arrest warrant. *See Scott v. White*, 2018 WL 2014093, at *3 (W.D. Tex. Apr. 30, 2018) ("[T]aking notice of the fact that a magistrate issued arrest warrants based on probable cause is not the same as taking notice that probable cause existed to support [the plaintiff's] arrest based on the magistrate's determination[.]").

<em>ii.     Official Capacity Constitutional Claim</em>

Jones argues that any constitutional claim brought against him in his official capacity should be dismissed as redundant or duplicative of the claims against the City. Doc. 18, Jones's Mot., 3. Poullard does not respond to this argument. *See generally* Doc. 25, Pl.'s Resp. (Jones). The Court agrees with Jones that to the extent Poullard raises an official capacity claim against Jones, it is duplicative of her claims against the City.

"[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . ." *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (citations omitted). Accordingly, a plaintiff's "claims for damages against . . . individually named . . . officer defendants in their official capacities are in essence claims against [the municipality]." *Salcido ex rel. K.L. v.*

-25-

*Harris Cnty.*, 2018 WL 4690276, at *6 (S.D. Tex. Sept. 28, 2018) (citing *Holt*, 469 U.S. at 471–72; *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("[O]fficial capacity suits are really suits against the governmental entity[.]"). Thus, a district court may dismiss claims against municipal employees in their official capacities when the municipality is also a party to the suit. *E.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (dismissing official capacity claims where the allegations "duplicate[d] claims against the . . . governmental entit[y] [itself]") (citing *Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996)); *Salcido*, 2018 WL 4690276, at *6 (dismissing official capacity claims because "Harris County, the real party in interest, [was] a party to the lawsuit"); *Roe v. Johnson Cnty.*, 2020 WL 6576784, at *10 (N.D. Tex. July 31, 2020) (same, noting that "where a plaintiff brings claims against both a public official . . . in his official capacity and the public entity for which he works, the claims 'essentially merge'") (quoting *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 1996)), *R. & R. adopted*, 2020 WL 5542333 (N.D. Tex. Sept. 15, 2020); *Reyes v. Walesco Indep. Sch. Dist.*, 2008 WL 11452111, at *5 (W.D. Tex. June 20, 2008) (same, noting that the plaintiff asserted "the same § 1983 claims against [the municipal entity] that he assert[ed] against [the individual defendants] in their official capacities").

Poullard clearly brings her false-arrest claim against the City and Jones based on the same conduct. *See* Doc. 1, Compl., ¶¶ 6, 49, 51; *see also id.* ¶ 53 (noting that Jones "was acting under the direction and control of the City"). Accordingly, any official capacity claim she brings against Jones for false arrest is duplicative of the same claim against the City. Such a claim against Jones is thus dismissed without prejudice.[8]

---

[8]The Mayor likewise argues that any official capacity claim brought against him should be dismissed on these grounds. Doc. 19, Mayor's Mot., 3. Again, Poullard does not respond to this argument. *See generally*

iii.    *Individual Capacity Constitutional Claim*

Finally, the Court turns to Poullard's § 1983 false-arrest claim brought against Jones in his individual capacity. Jones argues for dismissal of this claim on the grounds that Poullard cannot overcome the independent intermediary doctrine so as to state a claim for false arrest and that Jones is entitled to qualified immunity. The Court agrees with Jones that Poullard's complaint does not overcome the independent intermediary doctrine. It thus declines to address qualified immunity at this time.

"The Fourth Amendment protects individuals from unwarranted arrests by requiring that the officer have reasonable grounds to believe a crime has been committed." *Goodarzi v. Hartzog*, 2013 WL 3110056, at *8 (S.D. Tex. June 14, 2013) (citing *Casanova v. City of Brookshire*, 119 F. Supp. 2d 639, 651 (S.D. Tex. 2000)). Particularly, "a police officer must make a determination of probable cause before he causes any significant pretrial restraint of liberty." *Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992). Thus, "[t]o prevail on a §1983 action for a false arrest, the plaintiff must prove that the officers lacked probable cause to arrest him or her." *Johnson v. Crook*, 2014 WL 12526257, at *2 (W.D. Tex. July 9, 2014) (citation omitted). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quotation marks and citations omitted).

---

Doc. 26, Pl.'s Resp. (Mayor). Because any false-arrest claim brought against the Mayor is also premised on the same conduct as that of Poullard's false-arrest claim against the City, Poullard's official capacity claim against the Mayor is dismissed as well.

But under the independent intermediary doctrine, "even an officer who acted with malice will not be liable [for false arrest] if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent [probable-cause] decision breaks the causal chain and insulates the initiating party." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016) (cleaned up) (quotations and citations omitted). However, the independent intermediary doctrine does not apply if "the arrestee can show that the officer tainted the magistrate's decision by knowingly supplying false information." *Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1002 (W.D. Tex. 2019). "However, some factual allegations, not merely 'bare assertions' of taint, are required." *Id.* (quoting *Shaw v. Villanueva*, 918 F.3d 414, 418 (5th Cir. 2019)). In other words, to overcome the independent intermediary doctrine at the Rule 12(b)(6) stage, the plaintiff must bring specific, nonspeculative allegations that the officer deliberately or recklessly provided false information to the independent intermediary. *See Anokwuru v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021) (rejecting plaintiff's argument that *Franks v. Delaware*, 438 U.S. 154 (1978), precluded application of the independent intermediary doctrine where complaint lacked specific, nonspeculative allegations of false information).

Here, Poullard acknowledges in her complaint that she was arrested pursuant to an arrest warrant supported by an arrest warrant affidavit. *See* Doc. 1, Compl., ¶ 39. And she does not dispute the authenticity of the arrest warrant or the arrest warrant affidavit attached to Jones's motion. *See generally* Doc. 25, Pl.'s Resp. (Jones). Thus, the independent intermediary doctrine is triggered here, "break[ing] the causal chain" between Jones's alleged lack of probable cause and Poullard's arrest. *Buehler*, 824 F.3d at 554. The Court acknowledges that Poullard alleges Brown identified her from a single-photo lineup, while the arrest warrant affidavit states that Brown was presented with a six-

person photo lineup. *Compare* Doc. 1, Compl., ¶ 28, *with* Doc. 18-1, Jones's Ex. 1. But importantly, Poullard's complaint lacks specific allegations that Jones falsified the content of the arrest warrant affidavit or otherwise misled the magistrate judge. *See generally* Doc. 1, Compl. Such allegations are required to overcome the independent intermediary doctrine. Indeed, even in response to Jones's motion, Poullard argues only that Jones failed to present certain information to the magistrate judge—not that Jones falsified information before the magistrate judge—thus tainting the judge's probable-cause determination. Doc. 25, Pl.'s Mot., 15 (emphasis added). By this, Poullard refers to Jones's purported lack of investigation and failure to confirm Poullard's alibi. *See id.* at 15–16. But because probable cause depends only on facts known to the officer at the time of an arrest, *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003), it matters not for the purpose of this claim what Jones may have discovered had he investigated Poullard more closely as she alleges he should have. In other words, if the facts that Jones knew at the time of Poullard's arrest amounted to probable cause—and a magistrate judge determined that they did—then Jones was not required to investigate further before arresting Poullard.

Because Poullard's allegations do not overcome the independent intermediary doctrine, Poullard's § 1983 false-arrest claim against Jones in his individual capacity is dismissed without prejudice.

> 2. Poullard's tort claims against Jones are dismissed under Texas Civil Practice and Remedies Code § 101.106.

"The filing of a suit under [the Texas Tort Claims Act] against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same

subject matter." Tex. Civ. Prac. & Rem. Code § 101.106(a). If a plaintiff sues in tort "both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* § 101.106(e).

These provisions are "designed to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable[.]" *Subbiah v. Kiel*, 850 F. Supp. 2d 653, 660 (N.D. Tex. 2011) (quotations and citations omitted). The irrevocable election applies to intentional torts, *Newman v. Obersteller*, 960 S.W.2d 621, 622–23 (Tex. 1997), and it applies even where the claims against the municipality are themselves dismissed. *E.g.*, *Davray, Inc. v. City of Midlothian*, 2005 WL 1586574, at *17 (N.D. Tex. July 6, 2005).

Here, Poullard brought tort claims against the City as well as against Jones. Doc. 1, Compl., ¶¶ 72, 82, 86. The City has moved on behalf of Jones to dismiss these claims against him. *See* Doc. 20, City's § 101.106 Mot., 1. Thus, all Poullard's tort claims against Jones are subject to dismissal. *See Green v. City of Irving*, 2009 WL 762202, at *1 (N.D. Tex. Mar. 24, 2009); *Livecchi v. City of Grand Prairie*, 2009 WL 306123, at *11 (N.D. Tex. Feb. 9, 2009).

Poullard argues that because Jones acted outside the scope of his duties, he is not entitled to the protections of the TTCA. Doc. 27, Pl.'s Resp. (City's § 101.106), 2. This argument is unavailing. The purpose of § 101.106 is to require plaintiffs to decide whether city officials are individually liable or officially liable in tort. If they are officially liable, then so is the city. Thus, Poullard cannot seek to hold the City liable and simultaneously hold Jones liable in his individual capacity for her tort claims. *See Jackson v. Dall. Indep. Sch. Dist.*, 1999 WL 58846, at *5 (N.D. Tex. Feb. 1, 1999) ("Although recognized as a harsh grant of immunity, [§ 101.106] serves the purpose of protecting

-30-

government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers." (internal quotation marks omitted)), *aff'd*, 232 F.3d 210 (5th Cir. Aug. 23, 2000) (table opinion) (per curiam). Moreover, the Court agrees with the City that criminal investigations are within the scope of Jones's employment. *See* Doc. 37, City's § 101.106 Reply, 3; *see also Tipps v. McCraw*, 945 F. Supp. 2d 761, 767 (W.D. Tex. 2013) ("As law enforcement officers, [the defendants] were generally acting within the scope of their duties in investigating a potential crime, applying for a warrant, and making an arrest. Even if conducted with improper motives or in an improper manner, their actions remain within the general scope of duties of law enforcement officers.").

In sum, Poullard's tort claims against Jones—abuse of process, invasion of privacy, and IIED—are dismissed because Poullard has made the irrevocable election to hold the City liable in tort, foreclosing her ability to hold Jones individually liable in tort. Poullard's tort claims against Jones are dismissed with prejudice.

D.     *The Mayor's Motion*

Poullard appears to bring the following claims against the Mayor: (1) failure to supervise; (2) invasion of privacy; and (3) IIED. Doc. 1, Compl., ¶¶ 66, 82, 86. Meanwhile, the Mayor seeks dismissal of Poullard's § 1983 false arrest, abuse-of-process, invasion-of-privacy, and IIED claims against him. *See generally* Doc. 19, Mayor's Mot. And Poullard responds that she has stated each of these claims against the Mayor. *See generally* Doc. 26, Pl.'s Resp. (Mayor). Accordingly, the Court assumes Poullard intends to bring the following claims against the Mayor: (1) § 1983 false-arrest; (2) abuse of process; (3) invasion of privacy; and (4) IIED. Below, Court assesses each of these claims as alleged against the Mayor.

-31-

1.    To the extent Poullard brings a § 1983 false-arrest claim against the Mayor, she
      appears to premise it on the Mayor's failure to supervise, and the claim fails.

"Section 1983 does not create supervisory or *respondeat superior* liability." *Brown v. Taylor*,

911 F.3d 235, 245 (5th Cir. 2018) (quoting *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)).

"Rather, a plaintiff must show either [that] the supervisor personally was involved in the

constitutional violation or that there is a sufficient causal connection between the supervisor's

conduct and the constitutional violation." *Id.* (quotation marks omitted and quoting *Evett v. Deep

E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

> When . . . a plaintiff alleges a failure to train or supervise, "the plaintiff must show
> that: (1) the supervisor either failed to supervise or train the subordinate official;
> (2) a causal link exists between the failure to train or supervise and the violation of
> the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate
> indifference."

*Est. of Davis*, 406 F.3d at 381 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)).

As discussed above, to establish deliberate indifference, a plaintiff must typically allege a "pattern of

similar constitutional violations by untrained employees[.]" *Connick*, 563 U.S. at 62.

Here, Poullard's allegations simply do not support a § 1983 false-arrest claim against the

Mayor. As an initial matter, Poullard does not suggest that the Mayor was personally involved in the

incidents alleged. Moreover, Poullard fails to allege a pattern of similar instances such that the Mayor

would be on notice of potential constitutional violations. Poullard avers that the Mayor failed to

adequately supervise the City's officers and that he was deliberately indifferent in such failure. Doc.

1, Compl., ¶¶ 66, 67. She further alleges that the Mayor was "well aware" of the officers' allegedly

unconstitutional behavior. *Id.* ¶ 70. But without allegations of the Mayor's personal involvement with

the allegedly unconstitutional conduct or other similar instances such that the Mayor would be on

notice of unconstitutional conduct, Poullard's allegations are far too conclusory to survive the Mayor's Rule 12(b)(6) motion.

Because Poullard's § 1983 false-arrest claim against the Mayor premised on the Mayor's failure to supervise is conclusory and not supported by sufficient factual allegations, such claim is dismissed without prejudice.

>    2.    Poullard's tort claims against the Mayor are dismissed under Texas Civil Practice and Remedies Code § 101.106.

Poullard brings her abuse-of-process, invasion-of-privacy, and IIED claims against the Mayor. Doc. 1, Compl., ¶¶ 72, 82, 86. The City has moved on behalf of the Mayor to dismiss these claims against him. *See* Doc. 20, City's § 101.106 Mot., 1. Poullard fails to dispute that her tort claims against the Mayor should be dismissed under § 101.106. *See* Doc. 27, Pl.'s Resp. (City's § 101.106), 2 (arguing tort claims against *Jones* should not be dismissed and failing to mention the Mayor). Thus, for the same reasons Poullard's tort claims against Jones are dismissed, her tort claims against the Mayor are likewise dismissed with prejudice. *See supra* Part III.C.2.

E.    *Leave to Amend*

Poullard asks that if the Court finds her complaint deficient, she be afforded leave to amend her claims to address their defects. Doc. 22, Pl.'s Resp. (Gateway), 16–17; Doc. 24, Pl.'s Resp. (City), 21; Doc. 25, Pl.'s Resp. (Jones), 27; Doc. 26, Pl.'s Resp. (Mayor), 21; Doc. 27, Pl.'s Resp. (City's § 101.106), 2.

Given that this is the Court's first opportunity to assess the sufficiency of Poullard's allegations, the Court agrees that it is appropriate to provide Poullard one chance to amend her complaint in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court

should freely give leave [to amend] when justice so requires."). Accordingly, the Court **ORDERS** Poullard to file an amended complaint within **THIRTY (30)** days of the date of this Order. Poullard may replead any claim that is not dismissed with prejudice. The Court notes that Jones and the Mayor each raised the defense of qualified immunity in their motions to dismiss. Doc. 18, Jones's Mot., 7; Doc. 19, Mayor's Mot., 8. It is unnecessary for the Court to assess Jones's and the Mayor's qualified-immunity defenses at this time. However, the Court advises Poullard that this defense is subject to be raised again, and the Court may have to assess whether Poullard's allegations overcome such a defense.

F.     *Unserved Defendants*

As mentioned above, Poullard brings this suit not only against Gateway, the City, Jones, and the Mayor, but also against Brown, the "sales associate" who sold Jane Doe the vehicle, and "John Does 1–3[,] . . . investigating and arresting officers[.]" Doc. 1, Compl., ¶¶ 10, 14. But as of the date of this Order, neither Brown nor John Does 1–3 appear to have been served.

"The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)" and filing proof of such service with the court. Fed. R. Civ. P. 4(c)(1), 4(l). If the plaintiff fails to do so "within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant," unless the plaintiff shows both (1) good cause for her failure to timely and properly effect service, and (2) good cause for the Court to extend the time for service for an appropriate period. Fed. R. Civ. P. 4(m); *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("Rule 4(m) requires dismissal if a defendant is not served within 90 days after the complaint is filed, unless the plaintiff shows good cause for the failure." (citing Fed. R. Civ. P. 4(m))).

Poullard's complaint has been on file with the Court longer than ninety days, and she has not filed proof of service on Brown or John Does 1–3. Nor has Poullard sought discovery to identify John Does 1–3. Accordingly, Poullard must effectuate service on Brown and John Does 1–3 and file proof of such service with the Court within **THIRTY (30)** days of the date of this Order. If Poullard fails to do so, her claims against Brown and John Does 1–3 will be dismissed without prejudice and without further notice.

## IV.

## CONCLUSION

For the reasons stated, the Court **GRANTS**, in their entirety, Gateway's motion to dismiss (Doc. 15), the City's motion to dismiss (Doc. 17), Jones's motion to dismiss (Doc. 18), the Mayor's motion to dismiss (Doc. 19), and the City's § 101.106 motion to dismiss (Doc. 20). The Court further **ORDERS** that:

(1)   Poullard's § 1983 false-arrest claim, including any § 1983 conspiracy claim, against **Gateway** is **DISMISSED WITHOUT PREJUDICE**;

(2)   Poullard's abuse-of-process claim against **Gateway** is **DISMISSED WITHOUT PREJUDICE;**

(3)   Poullard's invasion-of-privacy claim against **Gateway** is **DISMISSED WITHOUT PREJUDICE;**

(4)   Poullard's IIED claim against **Gateway** is **DISMISSED WITHOUT PREJUDICE;**

(5)   Poullard's § 1983 false-arrest claim, including any § 1983 conspiracy claim, against **the City** is **DISMISSED WITHOUT PREJUDICE;**

(6)   Poullard's failure-to-train and failure-to-supervise claims against **the City** are **DISMISSED WITHOUT PREJUDICE;**

(7)   Poullard's tort claims—namely, abuse of process, invasion of privacy, and IIED—against **the City** are **DISMISSED WITH PREJUDICE;**

(8)     Poullard's § 1983 false-arrest claim, including any § 1983 conspiracy claim, against **Jones** is **DISMISSED WITHOUT PREJUDICE;**

(9)     Poullard's tort claims—namely, abuse of process, invasion of privacy, and IIED—against **Jones** are **DISMISSED WITH PREJUDICE;**

(10)    Poullard's § 1983 false-arrest claim, including any § 1983 conspiracy claim, against **the Mayor** is **DISMISSED WITHOUT PREJUDICE;** and

(11)    Poullard's tort claims—namely, abuse of process, invasion of privacy, and IIED—against **the Mayor** are **DISMISSED WITH PREJUDICE.**

The Court further **ORDERS** that Poullard file an amended complaint addressing the deficiencies identified in this Order within **THIRTY (30)** days of the date of this Order.

Finally, the Court **ORDERS** that Poullard effectuate service on Brown and John Does 1–3 and file proof of such service with the Court within **THIRTY (30)** days of the date of this Order or face dismissal of her claims against them without further notice.

SO ORDERED.

SIGNED: June 10, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE