UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAKELIAH POULLARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-2439-B |
| | § | |
| RANDY JONES, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Randy Jones ("Jones")'s Motion to Dismiss (Doc. 62). For the reasons that follow, the Court **DENIES** the motion.

## I.

## BACKGROUND

This is a civil-rights case. Plaintiff Makeliah Poullard ("Poullard"), who alleges she is innocent, was arrested by Defendant Jones for fraudulent use of another's identifying information and detained until the charge against her was eventually dropped. The instant suit is premised on this arrest.

In April 2018, Jane Doe, an unidentified black female, purchased a truck from Gateway Buick GMC ("Gateway") using false credentials. Doc. 57, 2d Am. Compl., ¶¶ 7–8, 12. Later, a gentleman named Alvin Sanders was discovered in possession of the truck and was prosecuted for conspiring with Jane Doe to fraudulently purchase the truck. *Id.* ¶ 10. At this point, Jane Doe was still unidentified and at large. *See id.*

Jones, a lieutenant for the City of Fate Police Department, was the detective charged with investigating the fraudulent purchase of the truck. *Id.* ¶¶ 4, 11. Poullard alleges that "Jones focused his investigation on [her] because she was a relative of Alvin Sanders and a black female." *Id.* ¶ 13. According to Poullard, "[t]his scrutiny was baseless [and] unjustified because [she] did not have a close relationship with Sanders" and, in any event, she was working a shift at Waffle House at the time the truck was fraudulently purchased. *Id.* ¶¶ 13, 23. Poullard also alleges that "[a]t the conclusion of her shift at Waffle House, surveillance video shows [her] entering her home . . . in Lancaster, Texas." *Id.* ¶ 24.

It is undisputed that the Gateway employee who sold the vehicle to Jane Doe, Eric Brown ("Brown"), positively identified Poullard as Jane Doe when shown a photo of Poullard by Jones. *Id.* ¶¶ 15, 17; *see* Doc. 62, Def.'s Mot. However, Poullard contends that this identification resulted from a "coercive and inherently unreliable" process. Doc. 57, 2d Am. Compl., ¶ 19. Specifically, Poullard alleges that Jones generated "a single[,] isolated image of [her]" to show Brown, which prompted Brown to "conclude[] that [Poullard] must have been Jane Doe because [her photo] was the only image presented." *Id.* ¶¶ 14, 16. Brown's identification, Poullard claims, was "the only inculpatory evidence against [her]." *Id.* ¶ 19.

Following Brown's identification of Poullard, Jones swore to an arrest-warrant affidavit and obtained a warrant for Poullard's arrest. *Id.* ¶¶ 18–19; *see* Doc. 62-1, Jones Aff.; Doc. 62-2, Arrest Warrant. In his affidavit, Jones swore that "Brown picked Poullard out of a photo lineup that . . . consisted of *six* black females of similar characteristics." Doc. 62-1, Jones Aff., 2 (emphasis added).[1]

---

[1] Jones attaches his arrest-warrant affidavit to his motion to dismiss. *See* Doc. 62-1, Jones Aff. The extent to which the Court takes judicial notice of this and other attachments to Jones's motion is discussed *infra* Section III(A).

Poullard claims that this "misrepresentation tainted the magistrate's determination of probable cause," causing her to be wrongfully arrested and "charged with multiple felonies, including Fraudulent Use of Identifying Information, Forgery[,] and Tampering with Governmental Records." Doc. 57, 2d Am. Compl., ¶¶ 19–21. Sometime thereafter, Poullard was indicted by a Rockwall County grand jury on the same charges. *See id.* ¶ 28; Doc. 62-3, Indictment. In total, Poullard spent nine months in jail awaiting trial—"maintain[ing] her innocence [throughout] and reiterat[ing] [her alibi] to Jones"—before "all charges against [her] . . . were dismissed and [she] was freed." Doc. 57, 2d Am. Compl., ¶¶ 30, 33.

On August 21, 2020, Poullard filed the instant suit bringing claims against Gateway, Jones, the City of Fate, Texas, and Lorne Megyesi (then-Mayor of Fate).[2] *See* Doc. 1, Original Compl. Each defendant filed a motion to dismiss. Doc. 15, Gateway's Mot.; Doc. 17, City of Fate's Mot.; Doc. 18, Jones's Mot.; Doc. 19, Megyesi's Mot.; Doc. 20, Jones & Megyesi's Jt. Mot. The Court granted the motions in their entirety but also granted Poullard leave to amend certain claims. *See Poullard v. Gateway Buick GMC LLC*, 2021 WL 2376721, at *1 (N.D. Tex. June 10, 2021). Poullard then filed an amended complaint alleging claims against Gateway and Jones only. Doc. 42, 1st Am. Compl. Gateway and Jones again filed motions to dismiss. Doc. 45, Gateway's Mot. Dismiss; Doc. 46, Jones's Mot. Dismiss. Once again, the Court granted the motions to dismiss in their entirety but granted Poullard leave to amend; this time, Poullard was permitted to amend her claims against Jones only. *Poullard v. Gateway Buick GMC LLC*, 2021 WL 4244781, at *7–8 (N.D. Tex. Sept. 17, 2021).

On October 1, 2021, Poullard filed her Second Amended Complaint, which is the operative pleading in this case. Doc. 57, 2d Am. Compl. Poullard now brings a single claim against Jones for

---

[2] Poullard also brought claims against Brown and three John Does, but these defendants were never served and were later dropped from this suit. *See* Doc. 1, Original Compl.; Doc. 42, 1st Am. Compl.

false arrest under 42 U.S.C. § 1983. *Id.* ¶¶ 34–43. Jones then filed the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 62, Def.'s Mot. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARDS

A.   *Federal Rule of Civil Procedure 12(b)(6)*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff's complaint fails to state such a claim, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss. In considering a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted). However, the Court may also consider "matters of public record" and documents attached to a motion to dismiss to the extent they "are referred to in the complaint and are central to the plaintiff's claims." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

To survive a motion to dismiss, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). That means "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alteration omitted).

B.     *Qualified Immunity*

 "The doctrine of qualified immunity protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013). Once a defendant asserts qualified immunity, the burden shifts to the plaintiff, who must then negate the qualified immunity defense. *See Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). To overcome a defense of qualified immunity, the plaintiff must "demonstrate[] that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016). Courts have discretion in deciding which of the two prongs should be addressed first. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A motion to dismiss based on qualified immunity is evaluated under the same pleading standards as a traditional motion to dismiss. *Terwilliger v. Reyna*, 4 F.4th 270, 279–80 (5th Cir. 2021). Ultimately, the court is charged with determining "whether the complaint pleads facts that,

if true, would permit the inference that [the defendant is] liable under [42 U.S.C.] § 1983 . . . and would overcome their qualified immunity defense." *Id.* at 280 (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015)).

## III.

## ANALYSIS

Jones claims that Poullard's Second Amended Complaint must be dismissed because (1) he is entitled to qualified immunity, and (2) Poullard's indictment by a grand jury triggers the independent-intermediary doctrine, barring her false-arrest claim. The Court proceeds by first considering the extent to which it may take judicial notice of the documents attached to Jones's motion to dismiss. Next, the Court reviews Jones's claim to qualified immunity and determines that Poullard has sufficiently pled that Jones can be held liable under *Franks v. Delaware*, 438 U.S. 154 (1978). Finally, the Court analyzes whether the independent-intermediary doctrine bars Poullard's claim and concludes that it does not.

A.    *Judicial Notice of the Arrest Warrant, Arrest-Warrant Affidavit, and Indictment*

To begin, the Court notes that Jones attaches the following documents to his motion: (1) his arrest-warrant affidavit; (2) the resulting warrant for Poullard's arrest; and (3) Poullard's grand-jury indictment. *See* Doc. 62-1, Jones Aff.; Doc. 62-2, Poullard Warrant; Doc. 62-3, Indictment. The Court has previously taken judicial notice of the arrest warrant and the indictment as public records and does so again here for the same reason. *See Poullard*, 2021 WL 4244781, at *4–5. As for the arrest-warrant affidavit, the Court again takes judicial notice of it only to the extent that "Jones swore to the facts contained in the arrest[-]warrant affidavit and . . . the magistrate judge found those facts constituted probable cause to issue the arrest warrant." *See id.* at *5. Importantly, the

Court will not apply a presumption of truth to facts described within the affidavit where they conflict with Poullard's allegations. *Cf. Lovelace v. Software Spectrum*, 78 F.3d 1015, 1019 (5th Cir. 1996) (holding that courts may take judicial notice of public disclosure documents in securities fraud causes, but "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents").

B.      *Jones is Not Entitled to Qualified Immunity*

Having identified the materials to be considered, the Court now considers whether Jones's qualified immunity defense bars Poullard's claim. Jones claims he is entitled to qualified immunity because Poullard has failed to allege facts showing that he violated her constitutional rights or that his actions were objectively unreasonable in light of clearly established law. Doc. 62, Def.'s Mot., 11–13; Doc. 66, Def.'s Reply, 6. The Court disagrees.

"Poullard . . . assert[s] the clearly established right to be free from arrest without a good faith showing of probable cause."[3] *Terwilliger*, 4 F.4th at 285; *see* Doc. 65, Pl.'s Resp., 12; Doc. 57, 2d Am. Compl., ¶ 35. As explained in more detail below, Poullard has sufficiently alleged that her arrest was made without probable cause because Jones lied in his arrest-warrant affidavit. As such, she has "successfully allege[d] that [Jones] 'violated a . . . constitutional right" and the only remaining question is whether the right was "'clearly established' at the time of the challenged conduct." *Terwilliger*, 4 F.4th at 284 (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). The Court finds that it was.

---

[3] The Fourth Amendment, which is applicable to states by way of the Fourteenth Amendment, prohibits police officers from detaining or arresting a person without probable cause. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972); *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017).

"Since *Franks v. Delaware*, 438 U.S. 154 (1978), it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks*, 438 U.S. at 155–56).

Poullard satisfies *Franks*'s first prong by alleging that Jones intentionally misrepresented the process used to identify her in his arrest-warrant affidavit by concealing that "the only [inculpatory] evidence related to [Poullard]"—Brown's identification—was obtained after Jones showed Brown "a single isolated image of Poullard." Doc. 57, 2d Am. Compl., ¶¶ 15–16, 19, 37–38. Given that Jones's affidavit describes Brown as having picked Poullard out of a "photo lineup [that] consisted of six black females of similar characteristics," Doc. 62-1, Jones Aff., the Court concludes Poullard has sufficiently alleged that Jones made a "false statement . . . intentionally . . . or with reckless disregard for the truth." *See Winfrey*, 901 F.3d at 494 (quoting *Franks*, 438 U.S. at 155–56).

Poullard's Second Amended Complaint also satisfies *Franks*'s second prong. Under this prong, the Court is required to review a hypothetical "corrected" version of Jones's affidavit to determine whether, notwithstanding Jones's falsehood, the affidavit establishes probable cause for Poullard's arrest. *See Terwilliger*, 4 F.4th at 283. As the Fifth Circuit has explained, "[p]robable cause is a 'practical and common-sensical standard'" that "requires only 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Winfrey*, 901 F.3d at 495 (first quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013); and then quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). To determine whether probable cause exists, the Court "looks to the 'totality of the circumstances' to determine whether the magistrate with 'the facts available to [him] would "warrant

a [person] of reasonable caution in the belief'" to find that the suspect committed the crime for which [s]he is being arrested." *Id.* (quoting *Harris*, 568 U.S. at 243).

After excluding Jones's alleged misrepresentation, the "corrected" arrest-warrant affidavit contains two facts relevant to the magistrate's determination of probable cause. First, the corrected affidavit would include Jones's averment that "[a]n internet search of Sanders['s] known black female associates . . . revealed a picture of . . . Poullard." Doc. 62-1, Jones Aff., 2. This is, of course, insufficient standing alone to create a reasonable inference that Poullard had committed a crime. Second, the corrected affidavit would state that Brown identified Poullard as Jane Doe upon being shown "a single[,] isolated image of [Poullard]." *See* Doc. 57, 2d Am. Compl., ¶¶ 15–17. Notably, Jones has not argued that this fact, standing alone or viewed in conjunction with Jones's internet search, would create probable cause for Poullard's arrest. *See* Doc. 62, Def.'s Mot.; Doc. 66, Def.'s Reply.

Accepting Poullard's allegations as true and reviewing the them in a light most favorable to her, the Court finds that Jones's corrected affidavit does not establish probable cause for Poullard's arrest. *See Terwilliger*, 4 F.4th at 283. The Court recognizes that generally speaking, an eyewitness identification will establish probable cause "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying . . . or was in some fashion mistaken regarding his recollection." *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001) (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)). However, accepting Poullard's allegations as true, Jones *did* have reason to believe Brown was mistaken. It is well-established that "exhibiting a single photograph for identification purposes is impermissibly suggestive." *E.g.*, *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993) (citing *Manson v. Brathwaite*, 432 U.S. 98, 108–09

(1977)). And courts have found that where an impermissibly suggestive identification lacks requisite indicia of reliability, the identification may not support a finding of probable cause. *See Camacho v. United States*, 116 F. Supp. 3d 762, 792–94 (W.D. Tex. 2015) (finding authorities lacked probable cause to arrest a defendant where the process used to obtain a witness identification was unreliable); *In re Gonzalez*, 52 F. Supp. 2d 725, 738 (W.D. La. 1999) (finding the government failed to show probable cause in an extradition case where it failed to establish the reliability of relevant photo identifications). Here, though neither party specifically briefed it, the indicia of reliability supporting Brown's identification remains in question. *See* Doc. 57, 2d Am. Compl., ¶¶ 14–18. As such, the Court is persuaded that Poullard has sufficiently alleged that Jones's "corrected" affidavit would fail to create probable cause for her as necessary to satisfy *Franks*'s second prong.

Because Poullard's allegations establish that (1) Jones violated her constitutional right to be free from arrest without probable cause; and (2) Jones's action was objectively unreasonable in light of *Franks*, the Court concludes that Poullard has pled facts that would overcome Jones's qualified-immunity defense. *See Cowart*, 837 F.3d at 454.

C.   *Poullard's Claim is Not Barred by the Independent-Intermediary Doctrine*

Jones further argues that Poullard's Second Amended Complaint fails to overcome the independent-intermediary doctrine because the grand jury that indicted Poullard broke the causal

chain between Jones and the violation of Poullard's constitutional rights.[4] *See* Doc. 62, Def.'s Mot., 7–10.

"Under the independent intermediary doctrine, '"if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation" for the Fourth Amendment violation.'" *Winfrey*, 901 F.3d at 496 (quoting *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011)). The doctrine applies even if the officer acted with malice, "even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of a crime," so long as "the facts supporting the warrant or indictment are put before an impartial intermediary." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016) (emphasis omitted) (footnote omitted) (quoting *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)).

Although the independent-intermediary doctrine is robust, it is not without qualification. It does not apply "if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (quoting *Hand*, 838 F.2d at 1428); *see Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1002 (W.D. Tex. 2019). Thus, to overcome the independent-intermediary doctrine at the motion-to-dismiss stage, a plaintiff must bring specific, nonspeculative allegations that the defendant deliberately or recklessly provided false information to the independent intermediary. *See Anokwuru*

---

[4] The Fifth Circuit has stated that "[f]unctionally, the holding of *Franks* is an exception to the independent intermediary doctrine." *Terwilliger*, 4 F.4th at 281. Thus, the Court believes its conclusion under *Franks* forecloses Jones's arguments under the independent-intermediary doctrine. Nevertheless, because Jones's arguments touch on issues not directly addressed in a traditional *Franks* analysis (i.e., causation and the malice requirement), and because the parties' briefed the doctrine separately, the Court conducts a separate analysis. *See* Doc. 62, Def.'s Mot.; Doc. 65, Pl.'s Resp.; *cf. Winfrey*, 901 F3d at 493–96 (addressing the independent-intermediary doctrine and *Franks* separately).

*v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021). "[A]lthough . . . 'mere allegations of "taint"' are insufficient at summary judgment . . . such allegations may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *See McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017) (quoting *Cuadra*, 626 F.3d at 813).

In the present case, the parties agree that the grand jury that indicted Poullard qualifies as an independent intermediary, but they disagree as to whether the taint exception applies. *See* Doc. 62, Def.'s Mot., 7; Doc. 65, Pl.'s Resp., 7. Specifically, Jones argues that (1) applying the taint exception to grand-jury indictments contradicts precedent established by the Supreme Court in *United States v. Williams*, 504 U.S. 36 (1992), and (2) even if applying the taint exception to grand-jury indictments is generally permissible, Poullard has failed to sufficiently allege taint in this case. Doc. 62, Def.'s Mot., 7–11. The Court addresses each argument in turn.

1.   United States v. Williams Does Not Bar Poullard's Taint Argument

Jones concedes that "the Fifth Circuit has recognized a 'taint exception' which, if established, would serve to rebut the presumption that a facially valid indictment . . . break[s] the causal chain in a Fourth Amendment claim"; however, he asserts that recognizing a taint exception to negate the shielding effect of a grand-jury indictment under the independent-intermediary doctrine violates Supreme Court precedent set forth in *United States v. Williams*. *See* Doc. 62, Def.'s Mot., 10.

In *Williams*, the Supreme Court considered the validity of a Tenth Circuit rule requiring prosecutors to present "substantial exculpatory evidence" to grand juries. 504 U.S. at 45–47. There, a criminal defendant argued that his indictment should be dismissed after he discovered that prosecutors withheld exculpatory evidence from the grand jury. *Id.* at 38–40. Finding that the Tenth

Circuit's rule encroached on the traditional separation between courts and grand juries, the Supreme Court found that the Tenth Circuit's rule was invalid. *Id.* at 46.

Jones cites *Williams* for the idea "that federal courts have no authority to dismiss federal indictments." Doc. 62, Def.'s Mot., 10. Applying this proposition, Jones surmises that permitting a taint exception to the independent-intermediary doctrine is tantamount to "effectively dismiss[ing]" the indictment. *Id.* Although the indictment at issue here came from a state grand jury, Jones posits that the purported principle set forth by *Williams* equally applies to state indictments. *Id.* at 10–11. In response, Poullard argues that Jones's reliance on *Williams* is inapposite because the parties are not disputing the actions of a prosecutor or a court's attempt to impose rules on the grand jury process. Doc. 65, Pl.'s Resp., 9.

The Court finds that *Williams* does not preclude a § 1983 plaintiff from overcoming the independent-intermediary doctrine by showing the defendant's actions tainted grand jury proceedings. There are several issues with Jones's line of reasoning, not the least of which being that this Court is bound to apply Fifth Circuit precedent. First, *Williams* stands only for the proposition that federal courts may not require prosecutors to disclose exculpatory evidence to grand juries where such a rule is "not specifically required by the Constitution or the Congress." *See Williams*, 504 U.S. at 45–47. *Williams* does not, as Jones contends, hold that federal courts are without authority to dismiss federal indictments. *See id.* So while *Williams* may have some bearing on what actions constitute taint of a grand jury proceeding, it does not preclude application of the taint exception whenever a plaintiff has been indicted by a grand jury. *See Buehler*, 824 F.3d at 556 (quoting *Russell v. Altom*, 546 F. App'x 432, 437 (5th Cir. 2013) (quoting *Williams*, 504 U.S. at 51)).

Second, the Supreme Court has, since *Williams*, found that a grand-jury indictment did not foreclose a plaintiff from pursuing a Fourth Amendment claim for unlawful pretrial detention. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 920 n.8 (2017). In finding so, the Court explained:

> Nothing in the nature of the legal proceeding establishing probable cause makes a difference for the purposes of the Fourth Amendment: Whatever its precise form, if the proceeding is tainted—as here, by fabricated evidence—and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights.

*Id.* at 920 n.8. If a plaintiff can show that grand jury proceedings were tainted in order to establish that they were unlawfully detained without probable cause, it follows that Poullard may do the same to overcome the independent-intermediary doctrine here. *See id.* Accordingly, the Court finds Jones's argument under *Williams* unavailing.

### 2.   Poullard Has Sufficiently Pled an Exception to the Independent-Intermediary Doctrine

In dismissing Poullard's First Amended Complaint, the Court emphasized that, because Poullard failed to allege that Jones tainted the grand jury's proceedings whatsoever, her false-arrest claim necessarily failed to plead an exception to the independent-intermediary doctrine. *See Poullard*, 2021 WL 4244781, at *7. In her Second Amended Complaint, Poullard adds the following allegations related to her indictment:

- Subsequent to Plaintiff's arrest, Jones' allegations against Plaintiff were brought before a grand jury. Doc. 57, 2d Am. Compl., ¶ 26.
- Jones deliberately provided false information to the grand jury. Specifically, Jones misrepresented the manner in which Plaintiff was identified by Brown. *Id.* ¶ 27.
- Jones'[s] misrepresentation tainted the grand jury's deliberations and decision to indict because it precluded the grand jury members from knowing that the only inculpatory evidence against Plaintiff, the identification, was coercive and inherently unreliable. *Id.* ¶ 28.

Jones argues that these allegations are insufficient to overcome the independent-intermediary doctrine. *See* Doc. 62, Def.'s Mot., 7–10. Specifically, Jones points to language from the Court's Order dismissing Poullard's First Amended Complaint, wherein it counseled that "'rank speculation' and 'guessing' as to 'what took place before the grand jury and who testified before the grand jury' is insufficient." *Id.* at 9 (quoting *Poullard*, 2021 WL 4244781, at *8). Poullard responds that her allegations "are based on the only reasonable inference that can be drawn: that Jones testified to the grand jury consistent with information he swore to in the Affidavit of Probable Cause." Doc. 65, Pl.'s Resp., 8. Jones's demand that she show more, Poullard claims, is an attempt to "hold [her] to the impossible standard of knowing precisely what occurred within the grand jury [proceeding]." *Id.*

The Court finds that Poullard's allegations of taint are sufficient at this stage of litigation. As the Court explained in its past order, Poullard "is not requir[ed] . . . to prove the impossible—what occurred inside the secret proceedings of a grand jury." *Poullard*, 2021 WL 4244781, at *7 (quoting *Miller v. Stroman*, 2020 WL 2499757, at *6 n.2 (W.D. Tex. May 14, 2020)). Indeed, the Fifth Circuit has noted that "'mere allegations of "taint"' . . . may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Curtis v. Sowell*, 761 F. App'x 302, 304–05 (5th Cir. 2019) (first quoting *Cuadra*, 626 F.3d at 813; and then quoting *McLin*, 866 F.3d at 690). And here, Poullard has done just that by alleging that Jones lied in his arrest-warrant affidavit about how Poullard was identified by Brown.

As explained above, Poullard has sufficiently pled that Jones is liable under *Franks*. Absent any indication that Poullard's indictment was based on something other than the facts described in Jones's affidavit, this appears to be exactly the sort of case where "mere allegations of 'taint'" are sufficient to survive a motion to dismiss. *See McLin*, 866 F.3d at 690; *cf. Bustamante v. Christian*, 1997

WL 42530, at *5 (N.D. Tex. Jan. 29, 1997) ("Because [the plaintiff] maintains that the indictment was a product of false and misleading testimony, the court cannot say in the context of Rule 12(b)(6) that the indictment absolutely bars her claim that [the] defendants caused her false arrest."); *Sullivan v. Chastain*, 2005 WL 354032, at *3 (W.D. Tex. Jan. 4, 2005) (finding an allegation that an officer "swore out a Complaint against [the plaintiff] without personal knowledge or probable cause" was sufficient to survive a motion to dismiss). Poullard has alleged that (1) Jones used an impermissibly suggestive method to procure Brown's identification of Poullard; (2) the identification was the "only inculpatory evidence against [her]"; (3) Jones lied about the process used to identify Poullard in his arrest-warrant affidavit; and (4) Jones ignored Poullard's verifiable alibi.[5] *See* Doc. 57, 2d Am. Compl., ¶¶ 14–19, 28, 30. Taking these allegations as true, the Court finds them sufficient to elevate her corollary allegation that Jones tainted the grand jury's deliberations from purely speculative to a permissible inference based on other facts. *See* Doc. 57, 2d Am. Compl., ¶ 28; *McLin*, 866 F.3d at 690; *Winfrey*, 901 F.3d at 496.

Finally, the Court takes note of Jones's contention that Poullard has failed to plead that any misleading of the grand jury was done maliciously. Doc. 62, Def.'s Mot., 10. Poullard responds that this argument ignores the context created by the allegations in her pleadings. *See* Doc. 65, Def.'s Resp., 8. While Jones is correct that "a plaintiff must show that the official's malicious motive led the official to . . . misdirect the independent intermediary," *McLin*, 866 F.3d at 689, the Court is

---

[5] Poullard alleges that "[t]hroughout *her imprisonment* [she] maintained her innocence and reiterated to Jones that she was at work and home at the time the truck was fraudulently purchased." Doc. 57, 2d Am. Compl., ¶ 30 (emphasis added). Poullard's indictment indicates that she had already been arrested at the time her indictment was returned. *See* Doc. 62-3, Indictment (denoting Poullard as "*Arrested*"). Assuming, as the Court must at this stage, that Jones intentionally misrepresented the process used to obtain Brown's identification of Poullard in his arrest-warrant affidavit, his knowledge of Poullard's verifiable alibi any time between Poullard's arrest and the grand jury proceedings further supports an inference that Jones maliciously tainted the grand jury's deliberations.

convinced that Poullard has sufficiently alleged malice as necessary to survive a motion to dismiss. *See* Doc. 57, 2d Am. Compl., ¶¶ 30 (alleging that Jones knew about Poullard's alibi), 36 (alleging that Jones arrested Poullard "with the express purpose of attributing the crime to any black female related to or associated with Alvin Sanders") 37 (alleging that "Jones intentionally misrepresented the process used to identify [Poullard] . . . within his affidavit of probable cause"). As such, the Court finds that the independent-intermediary doctrine does not bar Poullard's claim.

## IV.

## CONCLUSION

For the reasons stated above, the Court finds Poullard has pled facts that, taken as true, "permit the inference that [Jones is] liable under § 1983 . . . and [that] would overcome [Jones's] qualified immunity defense." *See Terwilger*, 4 F.4th at 280 (quoting *Hinojosa*, 807 F.3d at 664). Moreover, additional fact finding is necessary to determine the indicia of reliability supporting Brown's identification. Put simply, Poullard's allegations are "more properly examined on summary judgment, when both sides have had the opportunity to conduct discovery." *See Sullivan*, 2005 WL 354032, at *3. Accordingly, the Court **DENIES** Jones's Motion to Dismiss (Doc. 62).

SO ORDERED.

SIGNED: March 31, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE